IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAVE/LOCK/PLUS II, LLC, | § | |
| | § | CIVIL ACTION NO. 4:20-cv-3557 |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| EROSION PREVENTION | § | |
| PRODUCTS LLC AND LEE A. | § | JURY TRIAL DEMANDED |
| SMITH, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| TLC Trucking & Contracting, LLC | § | |
| d/b/a TLC Construction | § | |
| Contract Services | § | |
| | § | |
| Third-Party Defendant. | § | |

**EROSION PREVENTION PRODUCTS LLC'S SECOND AMENDED COUNTERCLAIM
AND THIRD-PARTY COMPLAINT**

Defendant/Counterclaim and Third-Party Claim-Plaintiff Erosion Prevention

Products LLC ("EPP") hereby alleges the following second amend counterclaims against

Plaintiff/Counterclaim-Defendant Pave/Lock/Plus II, LLC d/b/a Paveloc Plus ("Paveloc")

and third-party claims against Third-Party Defendant TLC Trucking & Contracting, LLC

d/b/a TLC Construction Contract Services ("TLC"):

**NATURE OF THE ACTION**

1.     These counterclaims and third-party claims are for patent infringement

arising under the patent laws of the United States, codified in Title 35 of the United States

Code and for trade dress infringement and unfair competition under the Lanham Act,

codified in Title 15 of the United States Code, common law unfair competition under Texas

1

state law, tortious interference with business relations, and other related claims arising under the state law of the State of Texas.

## PARTIES

2.      EPP is a Texas limited liability company having its principal place of business at 1100 Nasa Pwky., Suite 402, Houston, TX 77058.  EPP is in the business of designing, producing, supplying and installing building products for constructing revetment systems.  Revetment systems are sloping structures placed on banks in such a way so to absorb the energy of incoming water.  Revetment systems can also assist in preventing or controlling erosion in connection with various applications including, but not limited to, drainage ditches, slope and shoreline protection, landfill caps, and boat ramps.

3.      Paveloc is a Texas limited liability company having its principal place of business at 1705 Cottonwood School Rd, Rosenberg, Texas 77471-7125.  Paveloc is in the business of manufacturing paving equipment and products including pavestones and concrete retaining walls.  Paveloc also manufactures cellular concrete products to be used in revetment systems and erosion prevention and control applications.  On or about April 9, 2021, Paveloc's right to transact business in Texas was forfeited for failure to satisfy its franchise tax requirements.  Accordingly, Paveloc presently does not have the right to conduct business in Texas, and does not have the right to maintain or defend against litigation in Texas.  The individual members of Paveloc are personally liable for any claims or causes of action presently being asserted against Paveloc.   Upon information and belief, Ted Gillis is one of the members of Paveloc, and as such is personally responsible for Paveloc's liabilities.   Throughout this Second Amended Counterclaims and Third-Party Complaint, the term "Paveloc" is used to include both Plaintiff/Counterclaim-Defendant Pave/Lock/Plus II, LLC d/b/a Paveloc Plus and any of

2

its members, including but not limited to Ted Gillis, who are personally liable for Paveloc's actions.

4.     Third-Party Defendant TLC Trucking & Contracting, LLC d/b/a TLC Construction Contract Services ("TLC") is a Texas limited liability company having its principal place of business at 11714 Charles Rd., Houston, Texas 77041. TLC is in the business of, among other things, providing general contractor services on construction projects, including projects related to the construction of revetment systems used in levees and water drainage ditches.

<u>**JURISDICTION AND VENUE**</u>

5.     This is an action, in part, for patent infringement under the United States Patent Laws, 35 U.S.C. § 271, et seq.  This Court has jurisdiction over the subject matter of this action under the provisions of 28 U.S.C. §§ 1331, 1338, 1355 and 1367. Additionally, this Court has jurisdiction over the subject matter of this action pursuant to Sections 39 and 43 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121. Finally, this Court has pendent jurisdiction over the state law claims asserted herein.

6.     Paveloc is subject to the personal jurisdiction in this Court because, as a Texas limited liability company with a principal place of business in Rosenburg, Texas, Paveloc is a resident of the forum state and of this District.  Paveloc has also submitted to personal jurisdiction by initiating in this Court an action against the Defendants for declaratory judgment of non-infringement and tortious interference.  Moreover, Paveloc admits that it conducts business in the State of Texas and this District related to its sales of revetment products, including articulated blocks units.  Moreover, Ted Gillis, a member

3

of Paveloc, also resides in Rosenberg, Texas and is subject to personal jurisdiction before this Court.

7.     TLC is also subject to the personal jurisdiction of this Court because, as a Texas limited liability company with a principal place of business in Houston, Texas, TLC is a resident of the forum state and of this District.

8.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.  Further, Paveloc maintains a regular and established place of business in this District.  Likewise, TLC also maintains a regular and established place of business in this District.

## BACKGROUND FACTS COMMON TO ALL ALLEGATIONS

### A.     EPP Developed the Channel Lock and Channel Lock II Blocks.

9.     For the past thirty years, Lee Smith ("Smith") has been in the business of designing, constructing and installing revetment and erosion prevention and control systems.  During that time, he has worked with numerous materials, designs and products to develop erosion control systems for various types of environments.  While working with different materials and designs for use in erosion prevention and control systems, Smith became familiar with a variety of different shaped products, including products that were square, rectangular, triangular and hexagonal.  As he sought to develop a superior product, Smith also wanted to develop a design that would be recognizable and distinct from other similar products on the market.  Accordingly, Smith settled on the design of an octagonal block with interlocking arms and sockets.  Initially, Smith developed a unique design of a block that became known as the Channel Lock block.

4



10.     In May of 1996, Smith formed EPP.  In addition to selling and installing the original Channel Lock product, Smith and EPP have invented and introduced other products, including the Channel Lock II Articulated Concrete Block.



11.     Since its founding in 1996, EPP has sold and installed more than 45 million square feet of Channel Lock, Chanel Lock II ACB Systems and the Channel Flex primarily in Texas, and in Louisiana and Florida as well.  Through this vast experience, EPP has

developed a strong reputation and goodwill for its Channel Lock, Channel Lock II and other related products.  Over the course of more than twenty-five years, the Channel Lock and Channel Lock II blocks have become known throughout the industry for their distinctive design, including their octagonal shape and unique interlocking arms and sockets.  These blocks are widely associated with EPP.  Indeed, before Paveloc began producing knock-offs of the Channel Lock and Channel Lock II blocks, no company in the industry other than EPP made a revetment block that included the unique design elements contained within the Channel Lock and Channel Lock II blocks.   In addition to designing the Channel Lock and Channel Lock II blocks to have a distinctive, unique, recognizable look, Smith also developed novel inventions with respect to the blocks, giving rise to the prosecution and issuance of several patents, including U.S. Patent Nos. 5,556,228;   6,276,870;   6,955,500;   7,037,037;   8,123,434;   8,123,435;   8,678,704; 8,678,405; 9,499,950; 9,605,389; 9,797,106; 10,322,525 and D688,817.

**B.     EPP Granted U.S. Patent No. 8,123,435.**

12.     On February 28, 2012, the United States Patent and Trademark Office issued U.S. Patent No. 8,123,435, entitled "Interlocking Revetment Block With An Array of Vegetation Holes" ("the '435 Patent")  to inventors James DeShaw and Smith after a full and exhaustive examination.  A copy of the '435 Patent was attached as Exhibit D to the original Counterclaims and Third-Party Complaint [Dkt. No. 19] and is incorporated herein by reference.  The '435 Patent was assigned to EPP, which holds all of the rights, title and interest to the patent, including the right to enforce the patent and to seek damages, as well as injunctive relief, for infringement of it.  The '435 Patent relates generally to erosion control blocks, and specifically to such blocks that also contain holes

6

adapted for anchoring by allowing vegetation to grow through them.  These holes are generally tapered so that the openings on one side of the block are larger in diameter than the openings on the other side of block.  The '435 Patent discloses several embodiments, including blocks containing various numbers of holes having different dimensions.  For example, the patent discloses that:

> While the preferred embodiment of the invention employs five holes to achieve a desired vegetation growth area, other numbers of holes can be utilized.  If a smaller vegetation area is desired than [sic] the four holes **62**, **64**, **66** and **68** can be used.  If three holes are desired, then either the three holes **62**, **70** and **66** can be used or the holes **64**, **70** and **68** can be used.

*See*, '435 Patent, Col. 7, lines 26 – 31.

13.    The '435 Patent contains 12 valid claims, including 2 independent claims and 10 dependent claims.  For example, claim 1 states:

> A revetment block comprising:
> said block having a body with a thickness defined by a distance between a top surface and a bottom surface of the body of said block, and said block having a plurality of side edges;
> at least two arms, each arm extending from a respective side edge of the body of said block;
> each said arm having an enlarged end connected to a respective side edge by a narrowed neck portion;
> at least two sockets formed inwardly from respective side edges of the body of said block;
> each said socket having an enlarged cavity connected by a narrowed inlet to the respective side edge of the body of said block, each said socket adapted for receiving therein an arm of a singularly constructed neighbor block; and
> a plurality of holes formed through the body of said block, wherein said holes are each tapered to flare out from the top surface of said block to the bottom surface of said block, a diameter of a bottom opening of each said hole in the bottom surface of said block is the same, and a diameter of a top opening of each said hole in the top surface of said block are not all the same.

In addition, dependent claim 2 states:

7

The revetment block of claim **1**, wherein said plurality of holes includes five holes.

Further, dependent claim 3 states:

The revetment block of claim **2**, wherein said five holes are located in the block in the manner of dots of a five-dot side or a dice.

Further still, dependent claim 4 states:

The revetment block of claim **2**, wherein said five holes are formed in said block in a core square, said core square having a first and second diagonals, each said diagonal extending from respective opposite corners of said core square, said core square having a portion of a first side coincident with the first side edge of said block, a portion of a second side of said core square coincident with the second side edge of said block, a portion of a third side of said core square coincident with the inner side edge of said first socket, and a portion of a fourth side of said core square coincident with the inner edge of said second socket; and the first said diagonal of said core square extending through two said holes, the second said diagonal of said core square extending through two other said holes, and an intersection of said first and second diagonals of said core square located at a fifth said hole.

Additionally, dependent claim 6 states:

The revetment block of claim **1**, wherein a finger hole is located adjacent two said sockets so that a workman can grasp the block between the finger hole and one said socket.

Further, dependent claim 7 states:

The revetment block of claim **1**, wherein said block is octagonal shaped, including four said side edges, and four angled corners, and wherein a finger hole is located adjacent an angled corner located between two said arms.

### C. Paveloc Infringed EPP's Patent and Knocked-Off Its Designs.

14. In February 2010, EPP contracted with Paveloc to manufacture the Channel Lock block, followed by a new contract in December 2010 to manufacture the Channel Lock II block, for use on various projects. To ensure that Paveloc was fabricating

8

the Channel Lock, and later the Channel Lock II blocks correctly, EPP provided Paveloc with engineering drawings ("CAD drawings"), mold details, hydraulic test reports, as well as other documents setting out the technical specifications for the Channel Lock and Channel Lock II line of blocks.  EPP also included copies of its proprietary CAD drawings and technical specifications associated with its Channel Lock and Channel Lock II blocks on its internet website, to which Paveloc has had access.

15.    In addition, EPP instructed Paveloc to purchase molds that would enable Paveloc to pour the Channel Lock and Channel Lock II blocks.  EPP assisted Paveloc in securing the appropriate molds by providing specifications to the mold manufacturer and signing off on the technical drawings created in association with constructing those molds. Pavelock understood that even though mold manufacturers delivered the Channel Lock molds directly to it, Pavelock did not own those molds, but rather the molds were owned by EPP.  Further, Paveloc knew that the Channel Lock and Channel Lock II blocks were protected by various intellectual property rights of EPP, including EPP's patents and its distinctive trade dress covering the unique design of the blocks.

16.    Paveloc wanted EPP to enter into an agreement giving it the exclusive right to manufacture the Channel Lock and Channel Lock II blocks for EPP for a period of five years.  EPP was not willing to grant Paveloc such an exclusive manufacturing agreement, and as a result in part, relations between the two companies began to sour. During the spring of 2019, EPP decided to cease using Paveloc to manufacture the Channel Lock and Channel Lock II blocks.  As part of its efforts to wind down its business with Paveloc, EPP requested well into summer 2020, that Paveloc return all of the molds it possessed for the Channel Lock and Channel Lock II blocks.  Paveloc refused to return

9

these molds and instead, unbeknownst to EPP, began to use these molds to manufacture a knock-off of the Channel Lock and Channel Lock II blocks.  Paveloc calls its knock-off revetment blocks its "Articulating Revetment Paver" or "ARP" block.



Paveloc's Knock-off ARP Block

**D.     EPP and Paveloc Compete for the Fort Bend County Levee Improvement District No. 2 Project.**

17.     In 2012, EPP began providing its Channel Lock blocks for erosion prevention and control in connection with a series of construction projects contracted by the Fort Bend County Levee Improvement District No. 2 ("F.B.C. L.I.D. 2"), located in Fort Bend County, Texas.  Since 2012, EPP has developed a business relationship with F.B.C. L.I.D. 2.  In 2020, the F.B.C. L.I.D. 2 opened a new project for bidding.  The bid request called for the use of articulated concrete blocks meeting at least the following technical specifications:

The only approved product to be installed in Ditch 'E' is the 4.5" Articulated Concrete Block.

***

Articulating concrete block stability laboratory test results conducted per FHWA RD-89-199.

***

The 4.5" concrete blocks shall be a minimum of 36 PSF (lbs/sq.ft.), shall withstand water velocity of 26.1 FPS and withstand critical shear stress of a minimum of 31.8 PSF (at 0 Horizontal), as tested on a soil embankment.

***

The cellular concrete blocks shall be octagonal shaped with interlocking components for directional within a 15" module.

EPP's Channel Lock II block met each of the technical requirements specified in the request for bid, and in fact the bid request identified "Erosion Prevention Products; Channel Lock system" as the product preferred for this project.  *See* Exhibit A to EPP's Counterclaim and Third-Party Complaint [Dkt. 19-1], incorporated herein by reference.

18.    Being aware of the Ditch "E" project, and knowing that EPP was likely to submit a bid for the revetment block portion of the project, Paveloc decided that it would seek to compete against EPP by offering contractors its knock-off version of the Channel Lock II block.  For example, in June of 2020, Paveloc contacted a contractor known as ERS, Inc. to offer its knock-off blocks for the upcoming project.  Ted Gillis, the president of Paveloc, stated to Todd Rodgers at ERS, Inc.:  "As stated, we are approved and meet the requirements for this project.  . . .  Further I have talked with Phil Martin with Mike Stone and Associates and he has verbally told me since we have made most of the block for there [sic] projects he would waive the FHWA RD-89-199 Test Report.  He has approved it because *we are making the exact same block just calling it by a different name*."  (Emphasis added.)

19.    Ultimately the F.B.C. L.I.D. 2 awarded the general contract for the project to TLC, which in turn took bids from potential subcontractors to supply blocks in accordance with the specifications set out for the F.B.C. L.I.D. 2 project.  TLC received

11

bids from potential subcontractors, including both EPP (offering its Channel Lock II block) and Paveloc (offering its knock-off Articulating Revetment Paver, or "ARP" block).  On or about September 3, 2020, TLC informed EPP that it was not the lowest bidder for this project.  EPP then learned that the subcontract had been awarded to Paveloc, which had undercut EPP by offering its knock-off block for a substantially lower price..

20.     Unbeknownst to EPP at the time, Paveloc had represented to TLC, which in turn represented to the F.B.C. L.I.D. 2, that the knock-off ARP blocks it was offering to sell for this project were "identical" to the EPP Channel Lock II blocks, which are protected by the '435 Patent.  In its "Specifications for Paveloc Plus Articulating Concrete Paver," Paveloc stated:  "ARP is *identical to Channellock II* and therefore meets the same criteria." To support this representation, Paveloc actually copied EPP's CAD drawings and specifications for the Channel Lock II blocks, and proceeded to pass these off for its own knock-off ARP blocks.  While Paveloc was careful to change the name on the copied CAD drawing from EPP to its own, Paveloc was not so careful as to catch or correct the typographical errors contained in the CAD drawings and specifications.  For example, one of the EPP CAD drawings is titled "Side Flank Details."  The CAD File Name misspelled "SIDE-FLK" and instead named the file "SIADE-FLK."  This same error is included as the CAD File Name for the "Side Flank Details" included in the CAD drawings supplied by Paveloc.  *See* Exhibit B to EPP's Counterclaim and Third-Party Complaint [Dkt. 19-1], incorporated herein by reference.  Similarly, on page four of the schematics, a paragraph numbering error occurs under Section 3.3 "Finishing."  The subparagraph under this title is denoted as "3.41" when it should have been listed as "3.31" instead. This exact same error appears on page four of the schematics provided by Paveloc for

its "ARP" product.  *See* Exhibit. C to EPP's Counterclaim and Third-Party Complaint [Dkt. 19-1], incorporated herein by reference.

21.     In addition to the F.B.C. L.I.D. 2 project, upon information and belief, Paveloc has also sold and supplied its knock-off ARP blocks for projects in Magnolia, Houston, Katy, Cleveland, Olympia, Rodeo Palms and Lago Mar, Texas.  In each of these, and other projects, Paveloc has undercut competition by offering its knock-off ARP blocks, and it has eroded the price for these revetment blocks.  Further, when Paveloc described its experience working with revetment blocks as part of its bid submission for the F.B.C. L.I.D. 2 project, Paveloc stated that it "has over 300,000 square feet of production and installation under contract."

## **COUNT ONE – INFRINGEMENT OF U.S. PATENT NO. 8,123,435**

22.     EPP incorporates the foregoing paragraphs of its Second Amended Counterclaim and Third-Party Complaint by reference as though fully set forth herein.

23.     This action arises out of the infringement of the '435 Patent by both Paveloc and TLC.  Both Paveloc's and TLC's acts of infringement have occurred within this state and within this judicial district.

24.     Paveloc and TLC have infringed, and continue to infringe, either literally or under the doctrine of equivalents, the '435 Patent in the United States by making, using, selling and/or  offering to sell products that are covered by one or more valid claims of the '435 Patent, including at least claims 1, 2, 3, 4, 6 and 7.  More specifically, Paveloc has violated 35 U.S.C. § 271 by making, selling and offering to sell its knock-off ARP blocks. Likewise, TLC has violated 35 U.S.C. § 271 by selling and offering to sell the knock-off ARP blocks to the F.B.C. L.I.D. 2.  In conjunction with the F.B.C L.I.D. 2 project, Paveloc

13

submitted a proposal to TLC offering to sell its knock-off ARP block, which Paveloc stated "is identical to Channellock II . . ."  TLC, in turn, submitted to LJA Engineering, Inc. ("LJA"), the engineering firm overseeing the F.B.C L.I.D. 2 project its offer to sell Paveloc's knock-off ARP block, which was stated as being "identical to Channellock II . . ."

25.     Beyond stating that Paveloc's knock-off ARP block "is identical to Channellock II", Paveloc also included in its offer to TLC, and TLC in turn included in its offer to LJA and to F.B.C. L.I.D. 2, a set of schematics that included what purports to be a design drawing of the knock-off ARP block.



26.     The thickness of the body of the knock-off ARP block is defined by a distance between the top surface and the bottom surface of the body of the block, and the block has a plurality of holes.

14



27.     Further, Paveloc's knock-off ARP block has two arms that each extend from a respective side edge of the block.  Each arm has an enlarged end connected to a respective side edge by a narrowed neck portion.  The knock-off ARP block also has two sockets formed inwardly from respective side edges of the body of the block.  Each socket has an enlarged cavity connected by a narrowed inlet to the respective side edge of the body or the block.  These sockets are adapted for receiving an arm of another block.

28.     Finally, the knock-off ARP block has a plurality of holes that are formed through the body of the block.  These holes are tapered to flare out from the top surface to the bottom surface of the block.  The diameter of the bottom opening of each hole is the same.  Further, the diameter of the top opening of each hole are not all the same as the diameter of the bottom opening.

29.     In addition, a visual inspection of knock-off ARP blocks delivered by Paveloc to the TLC jobsite confirms that the knock-off blocks meet the limitations of claim 1 of the '345 Patent.  The knock-off ARP blocks contain a plurality of holes formed through the body of the blocks.  These holes are each tapered to flare out from the top surface to the bottom surface of the blocks.   Further, the diameter of the bottom-surface openings of the five holes is 3 inches, while the diameters of the top-surface openings vary from 2 ¼ inches to more than 2 ⅜ inches.  Thus, not only are the diameters of the top-surface

15

openings in the knock-off blocks delivered by Paveloc not all the same as the diameters of the bottom-surface openings, but they are also not all the same for each of the top-surface openings.

 

2 ⅜ inch diameter opening     2 ¼ inch diameter opening

30.     In addition, as seen through both Paveloc's schematics for it knock-off ARP blocks, and from the visual inspection of the actual blocks delivered by Paveloc to TLC's jobsite, the Paveloc knock-off ARP blocks infringe dependent claim 2 of the '435 Patent by having a plurality of holes that includes five holes.

31.     Paveloc's knock-off ARP blocks also infringe dependent claim 3 of the '435 Patent by having five holes that are located in the block in the manner of dots of a five-dot side of a dice.

32.     Paveloc's knock-off ARP blocks also infringe dependent claim 4 of the '435 Patent by having, *inter alia*, five holes formed in the block in a core square, where the core square has first and second diagonals.  Further, the Paveloc's knock-off ARP blocks have a first diagonal of the core square extending through two holes, a second diagonal of the core square extending through two other holes and an intersection of the first and second diagonals at a fifth hole.

4830-8409-2401v.2

33.     Paveloc's knock-off ARP blocks also infringe dependent claim 6 of the '435 Patent by having a finger hole located adjacent the sockets so that a workman can grasp the block between the finger hole and the socket.

34.     Paveloc's knock-off ARP blocks also infringe dependent claim 7 of the '435 Patent by having an octagonal shaped block with four side edges, four angled corners and a finger hole located adjacent an angled corner which is located between two arms.

35.     Paveloc has had notice of the '435 Patent at least since it began manufacturing the Channel Lock II block for EPP.  Further, EPP has marked its Channel Lock II blocks with the number of the '845 Patent in accordance with 35 U.S.C. § 287(a). EPP's filing of its Counterclaims constitutes proper notice of its claims of infringement to both Paveloc and TLC under 35 U.S.C. § 287.

36.     Paveloc has willfully infringed the '435 Patent under 35 U.S.C. § 284 by making, using, selling and/or offering to sell its knock-off ARP blocks.  Further, Paveloc's actions in this matter make this an exceptional case under 35 U.S.C.  § 285.

37.     Unless enjoined by this Court, EPP believes that Paveloc's and TLC's infringing conduct will continue.

38.     As a result of Paveloc's and TLC's actions, EPP has suffered and will continue to suffer substantial injury, including irreparable injury, and has suffered and will continue to suffer damages in an amount to be determined at trial, including but not limited to lost profits, which EPP would have made but for Paveloc's and TLC's infringing conduct.  Further, through its acts of infringement, Paveloc has caused the price of revetment blocks, such as EPP's Channel Lock II block, to be eroded.

## COUNT TWO - FEDERAL TRADE DRESS INFRINGEMENT
## UNDER 15 U.S.C. § 1125(a)

39.     EPP incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of its Second Amended Counterclaim and Third-Party Complaint.

40.     EPP has been using its unique and distinctive octagonal shape and design for its Channel Lock and Channel Lock II blocks for more than twenty five years.  The octagonal shape and design of EPP's Channel Lock and Channel Lock II block, as well as the unique shape and size of the interlocking arms and sockets constitute non-functional Trade Dress.

41.     The Channel Lock and Channel Lock II Trade Dress are unique and distinctive as to the source of the Channel Lock II Products, namely EPP.  Further, the Channel Lock and Channel Lock II Trade Dress have acquired secondary meaning because consumers of revetment materials associate EPP as the source of goods provided under the Channel Lock and Channel Lock II Trade Dress. The EPP Channel Lock and Channel Lock II Trade Dress is entitled to protection under both federal and common law.

42.     Paveloc's and TLC's use in commerce of the EPP Channel Lock and Channel Lock II Trade Dress to advertise, market, promote, distribute, offer for sale, and/or sell the Paveloc knock-off ARP products, without EPP's consent, causes and is likely to continue to cause confusion and/or mistake, and/or deceives consumers into mistakenly believing that Paveloc and/or TLC is EPP, or is licensed, an authorized distributor, or affiliate of EPP, or that Paveloc and/or TLC, their respective activities,

18

and/or products, are authorized, endorsed, sponsored, or approved by EPP, or vice versa.

43.     Further, Paveloc's and TLC's actions, as set forth herein, constitute unfair competition, at least because Paveloc has obtained an unfair advantage as compared to EPP, through its use of the EPP Channel Lock and Channel Lock II Trade Dress to falsely designate the origin, affiliation or sponsorship of the knock-off ARP product.

44.     Paveloc and TLC have each made, and will continue to make, substantial profits and gain from their unauthorized use of the EPP Channel Lock and Channel Lock II Trade Dress to which they not entitled in law or equity.  Further, through its actions Paveloc has caused the price of revetment blocks, including EPP's Channel Lock and Channel Lock II blocks, to erode.

45.     Paveloc's and TLC's acts as alleged herein were intentional, willful, with bad faith, and were committed with the intention of deceiving and misleading the public and causing harm to EPP, and made with the full knowledge of EPP's trade dress rights.

46.     Paveloc's and TLC's acts and conduct complained of herein constitute federal trade dress infringement in violation of 15 U.S.C. § 1125(a).

47.     EPP has suffered, and will continue to suffer, irreparable harm from Paveloc's and TLC's unauthorized use of the EPP Channel Lock and Channel Lock II Trade Dress unless restrained by law.

48.     As a direct and proximate result of Paveloc's and TLC's infringing and unlawful acts, EPP has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial, and, at minimum, exceeds $75,000, exclusive of interest and costs.

## COUNT THREE – FEDERAL TRADE DRESS DILUTION
## UNDER 15 U.S.C. § 1125(c)

49.     EPP incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of its Second Amended Counterclaim and Third-Party Complaint.

50.     The EPP Channel Lock and Channel Lock II Trade Dress are non-functional, and unique and distinctive as to the source of the EPP Channel Lock and Channel Lock II Products, and has acquired secondary meaning, because consumers associate EPP as the source of goods provided under the EPP Channel Lock and Channel Lock II Trade Dress.  The EPP Channel Lock and Channel Lock II Trade Dress is entitled to protection under both federal and common law.

51.     The EPP Channel Lock and Channel Lock II Trade Dress are widely recognized by the general public and has acquired fame throughout the United States, entitling it to protection from dilution.

52.     Paveloc's and TLC's unauthorized use of the EPP Channel Lock and Channel Lock II Trade Dress began after the EPP Channel Lock and Channel Lock II Trade Dress became distinctive and famous.

53.     Paveloc's and TLC's unauthorized use of the EPP Channel Lock and Channel Lock II Trade Dress is likely to dilute the distinctive quality of the EPP Channel Lock and Channel Lock II Trade Dress, to decrease the capacity of that trade dress to identify and distinguish EPP's Channel Lock and Channel Lock II Products, and to cause harm to EPP's business reputation.

54.    Paveloc's and TLC's acts, as set forth herein, were intentional, willful, committed in bad faith, and with the intention of deceiving and misleading the public and causing harm to EPP, and made with the full knowledge of EPP's trade dress rights.

55.    Paveloc's and TLC's acts and conduct complained of herein constitute trade dress dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

56.    Unless enjoined by this Court, Paveloc's and TLC's acts as complained of herein will cause EPP to suffer irreparable harm for which there is no adequate remedy at law.

57.    As a direct and proximate result of Paveloc's and TLC's infringing and unlawful acts, EPP has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial, and, at minimum, exceeds $75,000, exclusive of interest and costs.

## COUNT FOUR – TRADE DRESS DILUTION UNDER TEX. BUS. & COM. CODE § 16.103

58.    EPP incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of its Second Amended Counterclaim and Third-Party Complaint.

59.    The EPP Channel Lock and Channel Lock II Trade Dress are non-functional.

60.    The EPP Channel Lock and Channel Lock II Trade Dress are unique and distinctive as to the source of the EPP Channel Lock and Channel Lock II Products, and has acquired secondary meaning because consumers associate EPP as the source of goods provided under the EPP Channel Lock and Channel Lock II Trade Dress.

21

61.     Through prominent, long, and continuous use in commerce, including commerce within the State of Texas for more than thirty years, the EPP Channel Lock and Channel Lock II Trade Dress has become and continues to be famous and distinctive throughout the State of Texas and in geographic areas in Texas.

62.     Paveloc's and TLC's unauthorized use of the EPP Channel Lock and Channel Lock II Trade Dress began after the EPP Channel Lock and Channel Lock II Trade Dress became distinctive and famous.

63.     Paveloc's and TLC's unauthorized use of the EPP Channel Lock and Channel Lock II Trade Dress is likely to dilute the distinctive quality of the EPP Channel Lock and Channel Lock II Trade Dress, to decrease the capacity of the Channel Lock and Channel Lock II Trade Dress to identify and distinguish EPP's products, and to cause harm to EPP's business reputation.

64.     Paveloc's and TLC's acts as alleged herein above were intentional, willful, committed in bad faith, and with the intention of deceiving and misleading the public and causing harm to EPP.  Paveloc's bad faith is evidenced at least by the similarity of its knock-off ARP product to the EPP Channel Lock and Channel Lock II Trade Dress, and by Paveloc's continuing disregard for EPP's intellectual property rights.

65.     The aforesaid acts of Paveloc and TLC constitute trade dress dilution in violation of the Texas Anti-Dilution Statute, TEX. BUS. & COM. CODE § 16.103.

66.     Unless enjoined by this Court, Paveloc's and TLC's acts as complained of herein will cause EPP to suffer irreparable harm for which there is no adequate remedy at law.

67.     As a direct and proximate result of Paveloc's and TLC's infringing and unlawful acts, EPP has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.  EPP is entitled to injunctive relief, and EPP is also entitled to recover at least Paveloc's and/or TLC's profits associated with the sales of the knock-off ARP blocks, actual damages, enhanced profits and damages, and reasonable attorney fees under at least TEX. BUS. & COM. CODE § 16.104.

## COUNT FIVE– MISAPPROPRIATION UNDER TEXAS LAW

68.     EPP incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of its Second Amended Counterclaim and Third-Party Complaint.

69.     Over the course of more than thirty years, EPP has created the Channel Lock and Channel Lock II Trade Dress through an extensive investment of time, labor, skill and money.  Paveloc has unlawfully misappropriated EPP's Channel Lock and Channel Lock II Trade Dress by using that distinctive and well-known trade dress to compete with EPP with its own knock-off ARP blocks.  In addition, Paveloc has misappropriated the schematics, design drawings, CAD drawings, specifications and molds for the Channel Lock and Channel Lock II products in order to manufacture its own knock-off ARP blocks.  Paveloc has gained a special advantage over EPP in that competition by enjoying a "free ride" because it was not burdened with making the substantial investment that EPP made to develop the Channel Lock and Channel Lock II Trade Dress.  Paveloc has caused EPP to suffer commercial damage at least by

supplying its knock-off ARP blocks in various projects, including but not limited to the the F.B.C. L.I.D. 2 project.

70.     Paveloc's misappropriation of the EPP Channel Lock and Channel Lock II Trade Dress and EPP's schematics, design drawings, CAD drawings, specifications and molds for the Channel Lock and Channel Lock 2 blocks has been intentional, willful, and malicious, and these acts and conduct as complained of herein constitute misappropriation in violation of the common law of the State of Texas.

71.     As a direct and proximate result of Paveloc's infringing and unlawful acts, EPP has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.  Further, unless enjoined by this Court, Paveloc's continued actions will cause EPP to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT SIX – UNFAIR COMPETITION

72.     EPP incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of its Second Amended Counterclaim and Third-Party Complaint.

73.     Through extensive time, labor, skill and money, EPP created its Channel Lock and Channel Lock II blocks, including the distinctive trade dress that is unique to these products.   In addition, EPP developed proprietary drawings, schematics and specifications for its blocks, spent money to have its blocks tested with respect to their hydraulic performance, and invested in special molds for the manufacturing of its blocks. By its own admission, Paveloc is offering to customers the exact same block as the EPP Channel Lock and Channel Lock II blocks, only Paveloc calls its block by a different name.

24

Paveloc is offering its knock-off blocks in direct competition with EPP.  In connection with offering its knock-offs of the EPP Channel Lock and Channel Lock II blocks, Paveloc is also using and relying on EPP's proprietary drawings, schematics and specifications, as well as EPP's funded hydraulics test results for the Channel Lock and Channel Lock II blocks in order to promote its knock-off ARP blocks.  Further, Paveloc has used the molds originally designed for the manufacturing of the Channel Lock and Channel Lock II blocks to pour and manufacture its own knock-off blocks.  Paveloc has not had to incur the investment of time, labor and money that EPP did to develop the Channel Lock and Channel Lock II blocks, together with their drawings, schematics, specifications, molds and hydraulic testing.  Without being burdened with the expenses incurred by EPP, Paveloc has enjoyed a "free ride," thereby gaining a special advantage when competing against EPP with its knock-off version of the Channel Lock and Channel Lock II blocks.

74.    As a direct and proximate result of Paveloc's unfair competition, EPP has suffered and will continue to suffer commercial damages in an amount that is not presently ascertainable, but will be established at trial.  Further, unless enjoined by this Court, Paveloc's continued acts of unfair competition will cause EPP to suffer irreparable harm for which there is no adequate remedy at law.

### **COUNT SEVEN – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

75.    EPP incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of its Second Amended Counterclaim and Third-Party Complaint.

76.    EPP began providing and installing its Channel Lock and Channel Lock II blocks to the F.B.C. L.I.D. 2 in 2012.  Since then, EPP has developed a business

4830-8409-2401v.2

relationship with F.B.C. L.I.D. 2.  As  a result of that relationship, F.B.C. L.I.D. 2 has specified EPP's Channel Lock II block on a number of its projects.  In addition, EPP has developed valid business relations and expectancy of such relations with other general contractors that have done work with F.B.C. L.I.D. 2.  Through its work over the years with EPP, Paveloc has gained knowledge of the business relationships and expectancies that EPP has built.  After EPP stopped doing business with it, Paveloc decided to knock-off EPP's Channel Lock and Channel Lock II blocks by making what it refers to as its ARP Block.  Instead of developing its own product, Paveloc simply copied the Channel Lock and Channel Lock II blocks, as well as the intellectual property embodied in those products, including patented inventions and distinctive and unique trade dress.  Paveloc also copied and used as its own EPP's drawings, schematics, specifications, hydraulic test results, and molds in order to make and promotes its knock-off blocks.  Paveloc has then intentionally used its knock-off blocks to cause a breach or termination of the relationship between EPP and F.B.C. L.I.D. 2, as well as EPP's expectancy of business relations with other general contractors, such as TLC, that are doing work for F.B.C. L.I.D. 2.

77.     Paveloc's interference was without right or justification.  Paveloc used its knock-off of EPP's Channel Lock and Channel Lock II blocks, and told various general contractors that it had obtained a waiver of having to show that its knock-off blocks have passed the FHWA RD-89-199 Test Report, in order to effect its interference with EPP's relationship with F.B.C. L.I.D. 2.

78.     As a direct and proximate result of Paveloc's tortious interference with business relations, EPP has suffered and will continue to suffer damages in an amount

that is not presently ascertainable, but will be established at trial.  Further, unless enjoined by this Court, Paveloc's continued acts of tortious interference will cause EPP to suffer irreparable harm for which there is no adequate remedy at law.

**COUNT EIGHT – UNJUST ENRICHMENT**

79.     EPP incorporates and realleges, as if fully set forth herein, the allegations contained in the foregoing paragraphs of its Second Amended Counterclaim and Third-Party Complaint.

80.     The EPP Channel Lock and Channel Lock II Trade Dress are non-functional, and unique and distinctive as to the source of the EPP Channel Lock II Products, and have acquired secondary meaning across the United States, and particularly in the State of Texas, because consumers associate EPP as the source of goods provided under the EPP Channel Lock and Channel Lock II Trade Dress.

81.     EPP created the products covered by the EPP Channel Lock and Channel Lock II Trade Dress through extensive time, labor, effort, skill, and money.  In addition, EPP created and/or had created on its behalf schematics, design drawings, CAD drawings, specifications and molds necessary for manufacturing the Channel Lock and Channel Lock II brocks.

82.     Paveloc used the Channel Lock and Channel Lock II schematics, design drawings, CAD drawings, specifications and molds created by EPP or on behalf of EPP to manufacture its own knock-off ARP blocks.

83.     Paveloc's advertisement, promotion, offers for sale, sales, and/or distribution of its knock-off ARP product, in direct competition with EPP and the EPP Channel Lock II products, constitutes unjust enrichment, at least because Paveloc has

27

wrongfully obtained benefits at EPP's expense.  Paveloc has also, inter alia, operated with an undue advantage.

84.     Paveloc has wrongfully used and is wrongfully using the EPP Channel Lock and Channel Lock II Trade Dress and EPP's schematics, design drawings, CAD drawings, specifications, hydraulic test results, and molds in competition with EPP, and has gained and is gaining a wrongful benefit by undue advantage through such use. Paveloc has not been burdened with the expenses incurred by EPP, yet Paveloc is obtaining the resulting benefits for its own business and products.

85.     Paveloc's unjust enrichment at EPP's expense has been intentional, willful, and malicious.  Paveloc's bad faith is evidenced at least by the similarity of its knock-off ARP product to the EPP Channel Lock and Channel Lock II Trade Dress, and by Paveloc's continuing disregard for EPP's intellectual property rights.

86.     Paveloc's acts and conduct complained of herein constitute unjust enrichment.

87.     Unless enjoined by this Court, the acts of Paveloc complained of herein will cause EPP to suffer irreparable harm for which there is no adequate remedy at law.

88.     As a direct and proximate result of Paveloc's infringing and unlawful acts, EPP has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

## **CONSOLIDATED ALLEGATIONS**

Each of EPP's allegations are expressly incorporated into each of the causes of action set forth above.

28

## CONDITIONS PRECEDENT

All conditions precedent to EPP's recovery have been performed, have occurred or have been waived.

## REQUEST FOR INJUNCTION

The infringing activities of Paveloc and TLC have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to EPP.  EPP has no adequate remedy at law.  EPP is entitled to recover its reasonable and necessary attorneys' fees and costs of suit.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, EPP requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, EPP request entry of judgment in its favor and against Paveloc and TLC as follows:

**A.**	That Paveloc and TLC be declared and adjudged to have infringed the '435 Patent;

**B.**	That Paveloc and TLC, and their agents, sales representatives, distributors, servants and employees, attorney, affiliates, subsidiaries, successors and assigns, and any and all persons or entities acting at, through, under or in active concert or in participation with any or all of them, be enjoined and restrained preliminarily and permanently, for infringing, actively inducing others to infringe, and/or contributorily infringing the '435 patent;

29

**C.**     That Paveloc and TLC be held liable, jointly and severally, for damages sufficient to compensate EPP for any and all infringement of the '435 Patent under 35 U.S.C. § 284;

**D.**     That Paveloc and TLC be held liable, jointly and severally, for enhanced and treble damages under 35 U.S.C. § 284;

**E.**     That Paveloc and TLC be held liable, jointly and severally, for damages for infringing EPP's Channel Lock and Channel Lock II Trade Dress in violation of 15 U.S.C. § 1125(a) and (c) and TEX. BUS. & COM. CODE § 16.103;

**F.**     That Paveloc be required to provide a full accounting to EPP for all profits derived from its use of EPP's proprietary CAD drawings and proprietary octagonal shaped blocks and its production, reproduction, and preparation of derivative works based on, distribution, and display of unauthorized EPP works in all media, from all sources, worldwide;

**G.**     That Paveloc be prohibited from using EPP's proprietary CAD drawings and proprietary octagonal shaped blocks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product or the provision of any goods or services;

**H.**     That Paveloc be prohibited from using in any manner in a business or in connection with any products, services or business, or the advertising or promotion thereof, directly or indirectly, EPP's proprietary CAD drawings and proprietary octagonal shaped blocks;

**I.**     That Paveloc be prohibited from engaging in any other activity constituting unfair competition with EPP, or instructing, assisting, aiding or abetting any other person

30

or business entity in engaging in or performing any of the activities referred to in any of the foregoing paragraphs;

**J.**     That Paveloc be prohibited from interfering with any of EPP's business relations;

**K.**     That Paveloc be ordered to pay to EPP all damages, including future damages, that EPP has sustained or will sustain as a result of the acts complained of herein, and that EPP be awarded any profits derived by Paveloc as a result of said acts, or as determined by said accounting;

**L.**     That Paveloc  be ordered to pay to EPP punitive damages as a result of Paveloc's deliberate and willful misconduct;

**M.**     That Paveloc and TLC be ordered to pay to EPP pre-judgment and post-judgment interest on all applicable damages;

**N.**     That Paveloc be ordered to return to EPP all CAD drawings, specifications, test results, molds, and any other items used in the manufacturing of Channel Lock, Channel Lock II or other related EPP articulated concrete block products;

**O.**     That this case be declared exceptional and Paveloc and TLC be held liable for an award of EPP's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

**P.**     That EPP be awarded its costs of suit herein; and

**Q.**     That the Court grant such other and further relief as it may deem proper, just, and equitable under the circumstances.

Dated: July 6, 2021

Respectfully submitted,


By: */s/ Steven N. Williams*
Steven N. Williams
Texas State Bar No. 21577625
swilliams@munsch.com
Winston O. Huff
Texas State Bar No. 24068745
whuff@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Robert Hancock
Texas State Bar No. 24036719
rhancock@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
700 Milam Street
Houston, TX
Telephone: (713) 222-1470
Facsimile: (713) 222-1475

**ATTORNEYS FOR DEFENDANTS
EROSION PREVENTION PRODUCTS
AND LEE A. SMITH**

4830-8409-2401v.2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of the foregoing document, Defendants' Second Amended Counterclaims and Third-Party Complaint via electronic mail on July 6, 2021.

/s/ *Winston O. Huff*
Winston O. Huff

33