United States District Court
Southern District of Texas

**ENTERED**

March 01, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAVE/LOCK/PLUS II LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-3557 |
| | § | |
| EROSION PREVENTION PRODUCTS LLC, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## Memorandum and Order on Claim Construction

Erosion Prevention Products, LLC ("EPP" or the "Defendant"), owner of the United States Patent No. 8,123,435 ("the '435 Patent"), allegedly accused Pave/Lock/Plus II LLC ("Paveloc" or "Plaintiff") of infringing the '435 Patent. Presumably in response, Paveloc filed this declaratory judgment action for patent non-infringement and tortious interference. (Doc. No. 1). Third Party Defendant TLC Trucking & Contracting, LLC ("TLC") was added to the lawsuit by EPP. The present action is before the Court for the construction of disputed claim terms in the '435 Patent.

The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ("*Markman* hearing"), during which the parties presented evidence and argument regarding the proper construction of disputed claim terms. Based on the evidence before the Court, the arguments presented by counsel, and the governing legal authorities, the Court issues this Memorandum and Order construing one term contained in '435 Patent.

### I.     Background

Paveloc and EPP both design and construct "erosion prevention" systems. Put simply, the systems are made up of interlocking blocks and are used in retaining walls. EPP has a patent on its "Channel Lock Block" (U.S. Patent No. 8,123,435). In 2010, EPP contracted with Paveloc to

manufacture the Channel Lock Block. According to EPP, when the business relationship soured, Paveloc began manufacturing a "knock off" of the Channel Lock Block using the molds that EPP had provided.

In 2020, the Fort Bend County Levee Improvement District No. 2 opened a new project for bidding. It awarded the contract for the project to TLC, a general contractor providing contractor services on construction projects. TLC took bids from subcontractors for erosion prevention blocks. Both Paveloc and EPP submitted bids. TLC accepted Paveloc's bid. According to EPP, Paveloc got the project by using the alleged knock off of EPP's Channel Lock Block.

Around this time, Defendant Lee Smith, President of EPP, allegedly represented to third parties that Paveloc was in violation of EPP's purported intellectual property rights. In response, Paveloc sued EPP for declaratory judgment of noninfringement. EPP countersued and joined TLC. EPP's claims are for: patent infringement; trade dress infringement and dilution; misappropriation; unfair competition; tortious interference; and unjust enrichment.

## II.     Claim Construction Legal Standard

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Aventis Pharm., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). The patent claims in issue must be construed as a matter of law to determine their scope and meaning. *See, e.g., Markman*, 517 U.S. at 390; *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007).

"There is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis*, 715 F.3d at 1373 (first citing *Phillips*, 415 F.3d at 1312-13; and then citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Therefore,

courts must "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted); *see also Summit 6, LLC v. Samsung Elec. Co., Ltd.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313; *see also ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313; *ICU*, 558 F.3d at 1374.

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. For other claim terms, however, the meaning of the claim language may be less apparent. To construe those terms, the Court considers "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

The claims "provide substantial guidance as to the meaning of particular claim terms." *Id.* The Court may consider the context in which the terms are used and the differences among the claims. *See id.* "Because claim terms are normally used consistently throughout the patent, the

usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Accordingly, since the claims "are part of a fully integrated written instrument," the Court may also consider the specification and the patent's prosecution history. *Id.* at 1315, 1317.

The Federal Circuit has instructed that there are two circumstances when a claim term is not entitled to its ordinary and customary meaning: (1) when a patentee acts as his or her own lexicographer and sets out a definition in the written description, or (2) when the patentee unmistakably disavows the full scope of the claim term either in the specification or during prosecution. *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 13104, 1309 (Fed. Cir. 2014) (citing *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). To disavow claim scope, the specification or prosecution history must "make[ ] clear that the invention does not include a particular feature" even though the language of the claims "might be considered broad enough to encompass the feature in question." *Thorner*, 669 F.3d at 1366 (citation omitted). The disclaimer must be "clear and unmistakable." *Comp. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374-75 (Fed. Cir. 2008). The totality of the prosecution history informs the disavowal inquiry. *Id.* at 1379.

### III.    Construction of Disputed Terms

This Court has carefully reviewed the '435 Patent. It has also considered each side's evidence and arguments presented in the claim construction briefing and at the *Markman* hearing. The Court has also reviewed and hereby applies the governing Federal Circuit authority. On this basis, the Court construes the following '435 Patent claim term: "a diameter of a bottom opening of each said hole in the bottom surface of said block is the same, and a diameter of a top opening of each said hole in the top surface of said block are not all the same." ("Term").

4

The Term is used in claim 1 of the '435 Patent, as well as claims 2, 3, and 6 which are dependent thereon. Claim 1 is illustrative of the use of the Term, and reads:

A revetment block, comprising:

Said block having a body with a thickness defined by a distance between a top surface and a bottom surface of said block, and said block having a plurality of side edges;

at least two arms, each arm extending from a respective side edge of the body of said block;

each said arm having an enlarged end connected to a respective side edge by a narrowed neck portion;

at least two sockets formed inwardly from respective side edges of the body of said block;

each said socket having an enlarged cavity connected by a narrowed inlet to the respective side edge of the body of said block, each said socket adapted for receiving therein an arm of a similarly constructed neighbor block; and

a plurality of holes formed through the body of said block, wherein said holes are each tapered to flare out from the top surface of said block to the bottom surface of said block, **a diameter of a bottom opening of each said hole in the bottom surface of said block is the same, and a diameter of a top opening of each said hole in the top surface of said block are not all the same.**

'435 Patent col. 8 1. 14–36. The table below illustrates the parties' positions on construction.

| Paveloc/TLC's proposed construction | EPP's proposed construction |
|---|---|
| Indefinite; alternatively, plain and ordinary meaning, wherein plain and ordinary meaning means "each bottom opening has a diameter equal in size to the other bottom openings and at least one of the top openings has a diameter different in size to the other top openings, wherein the diameter is measured by the mold which forms the opening during manufacturing of the block." | Claim term is not indefinite. Plain and ordinary meaning, wherein the plain and ordinary meaning means "the diameter of the top opening of each hole are not the same as the diameter of the bottom holes." |

5

The parties primary dispute surrounds the plain and ordinary meaning of the Term, as well as whether the Term is indefinite.

EPP argues that the Term is not indefinite and that plain and ordinary meaning of the Term is "that the holes on the top surface merely have to be a different size from the holes on the bottom surface." (Doc. No. 94 at 17). The Term, per EPP, is nothing more than "a comparison of end hole openings on the bottom surface of the block, and then a comparison of the collective group of hole openings on the top surface with the collective group of bottom surface openings." (*Id.* at 17–18). The Court notes, however, that the language immediately preceding the Term makes clear that the diameter of the bottom hole openings is necessarily larger than the diameter of the top hole openings because the holes are "tapered to flare out from the top surface of each block to the bottom surface of each block." '435 Patent col. 8 1. 31–33. EPP further asserts that its construction is consistent with the prosecution history, noting that the "patentees' statement during prosecution simply reiterates what is said in Claim 1: that the diameters of the group of hole openings of the top surface are not the same as the diameters of the hole openings of the bottom surface." (Doc. No. 94 at 20–21). EPP argues that "[t]he only thing clearly and unambiguously disclaimed by the patentees was the presence of holes that had identically sized openings on both the top and bottom surface of the block," and therefore, the prosecution history supports its position. (Doc. No. 94 at 22). EPP's current interpretation would render the phrase under consideration redundant. Plus, it is contrary to the actual wording of the Term.

Paveloc, on the other hand, essentially argues that the Term is indefinite and that, alternatively, the Term's plain and ordinary meaning suggests that at least one of the top openings has a different diameter than the other top openings. (*See* Doc. No. 101 at 8). Paveloc points to the '435 Patent to support its position, noting that the specification shows that three of the top openings

6

have a diameter of a certain size, while the remaining two top openings have a larger diameter. '435 Patent, 7:51-61. Paveloc additionally notes that the prosecution history suggests that the Term was added by EPP in order to overcome a previously filed patent that already included the "tapered to flare out from the top surface of the block to the bottom surface of the block" language. (Doc. No. 101-6 at 72). Finally, Paveloc also contends that the diameters of the openings should be measured by the mold which formed the opening during the manufacturing of the block. The Court finds this contention to be unworkable, unreliable, and nowhere referenced in the plain and ordinarily language of the Term.

As a result, the Court finds neither construction to be appropriate. The Court, however, must turn to the parties' arguments concerning the definiteness of the Term before determining that claim construction is necessary.

In *Nautilus, Inc. v. Biosig Instruments, Inc.*, the Supreme Court held that definiteness requires "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." 572 U.S. 898, 910 (2014). EPP argues that the Term is definite, and as a result, claim construction is unnecessary. Paveloc notes, just as the Court has noted above, that "EPP's construction would result in the term being redundant of the tapered limitation." (Doc. No. 101 at 14). "The Federal Circuit has instructed courts to avoid construing claims 'so as to render physical structures and characteristics specifically described in those claims superfluous.'" *Shell Global Solutions (US) Inc. v. RMS Eng'g, Inc.*, 782 F.Supp.2d 317, 359 (S.D. Tex. Aug. 15, 2011) (citing *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 781 (Fed. Cir. 2010)). The Court agrees with Paveloc and finds that the Term is indefinite and therefore in need of claim construction.

## IV.   Conclusion

The Court has considered the evidence in the record. The Court has also considered the parties' oral arguments and explanations during the *Markman* hearing, which the Court found very helpful and informative. Based on this consideration of the evidence and the parties' arguments, as well as the application of governing claim construction principles, the Court construes the Term in the table below:[1]

| Disputed Term | Court's Construction |
|---|---|
| "a diameter of a bottom opening of each said hole in the bottom surface of said block is the same, and a diameter of a top opening of each said hole in the top surface of said block are not all the same" | the openings on the bottom surface of said block all have the same diameter, and the openings on the top surface of said block do not all have the same diameter |

Furthermore, the Court recognizes that Paveloc's Motion for Partial Summary Judgment on the issue of infringement remains pending. (Doc. No. 58). Given the Court's above construction of the Term, the Court will allow for each party to supplement their briefing on Paveloc's Motion, if they so choose, by March 18th, 2022.

It is **SO ORDERED**.

Signed at Houston, Texas, this 1st day of March, 2022.

Andrew S. Hanen
United States District Judge

---

[1] The Court acknowledges, as EPP somewhat anticipated, that its claim construction may exclude some alternative embodiments disclosed in the '435 Patent. (*See* Doc. No. 67 at 7–8). The Federal Circuit has held that "[a] claim construction that excludes the *preferred* embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (quoting *Vitronics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1583–84 (Fed. Cir. 1996)). Importantly, though, the Federal Circuit has also held that courts need not construe a claim term to encompass an alternative embodiment if the alternative embodiment contradicts the language of the claim. *See TIP Sys., L.L.C. v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373–75 (Fed. Cir. 2008) ("Although the alternative embodiment does not support the court's construction . . . the claims need not be construed to encompass all embodiments when the claim language is clearly limited to one or more embodiments.").