IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PAVE/LOCK/PLUS II LLC, § § Plaintiff, § VS. § CIVIL ACTION NO. 4:20-CV-3557 § EROSION PREVENTION PRODUCTS LLC, § *et al*, § § Defendants. § | |

## ORDER

Pending before the Court is Plaintiff and Counterclaim Defendant Pave/Lock/Plus II, LLC's ("Paveloc") Motion for Partial Summary Judgment (Doc. No. 58). Defendant and Counterclaim Plaintiff Erosion Prevention Products LLC ("EPP") filed a Response, (Doc. No. 67), Paveloc filed a Reply in Support, (Doc. No. 70), and EPP filed a Sur-Reply. (Doc. No. 74).

On November 10, 2021, the Court held a hearing on these motions. Following the hearing, the Court issued a Memorandum and Order on Claims Construction and allowed each party to supplement their briefings. (Doc. No. 132). Paveloc subsequently supplemented its Motion, (Doc. No. 135), and EPP supplemented its Response. (Doc. No. 138).

### I.   Background

Plaintiff Paveloc and Defendant EPP both design and construct "erosion prevention" systems. Put simply, the systems are made up of interlocking blocks and are used in retaining walls. EPP has a patent on its "Channel Lock II block" (U.S. Patent No. 8,123,435) ("'435 Patent"). In 2010, EPP contracted with Paveloc to manufacture the Channel Lock II block. According to EPP, when the business relationship soured, Paveloc began manufacturing the ARP block—what

EPP alleges is a "knock off" of the Channel Lock II block—using the same molds that EPP had provided.

In 2020, Fort Bend County Levee Improvement District No. 2 opened a new project for bidding. It awarded the contract for the project to TLC, a general contractor for construction projects. TLC took bids from subcontractors for erosion prevention blocks. Both Paveloc and EPP submitted bids. TLC accepted Paveloc's bid. According to EPP, Paveloc got the project by using the alleged knockoff of EPP's Channel Lock II block.

Paveloc sued EPP for declaratory judgment of noninfringement. EPP countersued and joined TLC. EPP's claims are for: patent infringement; trade dress infringement and dilution; misappropriation; unfair competition; tortious interference; and unjust enrichment.

## II. Procedural History

Paveloc moves for partial summary judgment on the grounds that the Accused Products—their Articulating Concrete Paver Class 4,5" Flexible Revetment System—do not infringe EPP's '435 Patent. (Doc. No. 58). Following the parties' initial briefing on this issue, the Court held a *Markman* hearing. Specifically, the Court heard testimony on the following claim term: "a diameter of a bottom opening of each said hole in the bottom surface of said block is the same, and a diameter of a top opening of each said hole in the top surface of said block are not all the same" ("Term"). After reviewing the parties' proposed claim construction and testimony, the Court issued a *Markman* Order construing the Term as follows:

| Disputed Term | Court's Construction |
|---|---|
| "a diameter of a bottom opening of each said hole in the bottom surface of said block is the same, and a diameter of a top opening of each said hole in the top surface of said block are not all the same" | the openings on the bottom surface of said block all have the same diameter, and the openings on the top surface of said block do not all have the same diameter |

(Doc. No. 132). Following the *Markman* Order, Paveloc supplemented its Motion. (Doc. No. 135). EPP similarly supplemented its original response. (Doc. No. 138). EPP also filed a response to Paveloc's supplement. (Doc. No. 140).

### III. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

"A patent infringement analysis involves two steps: 1) claim construction; and 2) application of the properly construed claim to the accused product." *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). The Court has completed the relevant claim construction in this matter. (*See* Doc. No. 132). "Whether the accused device contains an element

corresponding to each claim limitation or its equivalent is a question of fact, which, on summary judgment, is a question we review to determine whether a material factual issue remains genuinely in dispute." *TechSearch*, 296 F.3d at 1369–70. "To support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Id.* at 1371. "To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Id.*

## IV.   Analysis

Following the Court's claim construction in the *Markman* Order, there are two infringement-related issues before the Court. First, the Court must decide whether there is a genuine dispute of material fact as to Paveloc's alleged literal infringement. Specifically, whether or not "the openings of the top surface on [Paveloc's ARP] block do not all have the same diameter." Second, the Court must decide whether a genuine dispute of material fact exists as to Paveloc's alleged infringing offer to sell.

### A. Literal Infringement

On the first issue, Paveloc begins its argument by pointing to the ARP block's specification ("Specification") as proof that the ARP block's top-surface openings all have the same diameter. (Doc. No. 135 at 3; Doc. No. 19-3 at 18). Given the rendering included in the Specification, Paveloc argues that the ARP does not infringe the construction of the limitation set forth in the *Markman* Order. (Doc. No. 135 at 4).

Paveloc maintains that any argument for infringement based upon manufacturing defects must fail. First, it contends that "any variance in the intended design of Paveloc's ARP block purportedly documented by EPP can be attributed to slight defects" which "necessarily happens .

4

. . or can result" from the concrete molding process used to make the blocks, or the subsequent handling of the blocks. (Doc. No. 135 at 5) (citing *Middleton, Inc. v. 3M*, 311 F.3d 1384, 1389 (Fed. Cir. 2002) (reversing district court's construction of the term "uniform" as the "same thickness throughout, except that normal manufacturing tolerances are allowed."))._[1]_ Furthermore, Paveloc argues that if EPP relies on such defects in its argument, its infringement claims fail because the ARP block would not infringe the first section of the Court's *Markman* Order construction—"a diameter of a bottom opening of each said hole in the bottom surface of said block is the same"—because it follows that manufacturing defects would also result in the bottom openings having different diameters. (*Id.*). Paveloc notes that EPP's photographs demonstrating the defects reveal "manufacturing defects of less than 1/8 inch on a purported single block at a Paveloc construction site." (*Id.* at 4).

In response to Paveloc's contentions, EPP reasons that Paveloc's reliance on the ARP block's Specification fails because the Specification is simply a drawing of the ARP block and it conflicts with actual ARP blocks that have been manufactured. (Doc. No. 140 at 2). In support of this point, EPP offers photographs taken at a Paveloc construction site which show ARP blocks with top side holes having different diameters ranging from 1/8 inch to 1/2 inch variations. (Doc. Nos. 137-3, 137-4, 137-5; *see also* Doc. No. 138 at 8). EPP also points to the Declaration of Lee Smith, who testified to having taken the photographs. (Doc. No. 137-2). Finally, EPP asserts that there is no evidence to prove that the alleged deviations in diameter were caused by manufacturing defects, and consequently, a fact issue exists as to the cause of any alleged deviations. EPP contends that this evidence creates a genuine issue of material fact as to the size of the top-side

---

[1] The Court notes that the *Middleton* holding does not explicitly allow for manufacturing tolerances to be disregarded with respect to patent infringement. Instead, the holding simply rejects "manufacturing tolerances" to be considered when defining "uniform." *Middleton*, 311 F.3d at 1389.

holes of the ARP block.

holes of the ARP block.

The Court finds that a material question of fact exists as to whether Paveloc's ARP block infringes EPP's Channel Lock II block. While the ARP Block's Specification suggests that the block's top-side holes are uniform in size and thus non-infringing, EPP's evidence of ARP block's having top-side holes of varying diameters is sufficient to create a genuine dispute of fact. In other words, the design set out in the Specification is seemingly contradicted by at least one, if not more, of the existing ARP blocks. A factfinder is best situated to resolve this question. Paveloc's motion for summary judgment is denied as it relates to literal infringement.

### B. Infringing Offer to Sell

While not explicitly raised in Paveloc's Motion, EPP additionally argues that a material question of fact exists as to whether Paveloc made an infringing offer to sell. Patent infringement occurs when one "makes, uses, offers to sell, or sells any patented invention" without authorization. 35 U.S.C. § 271(a). Courts look to the products offered, rather than the products actually delivered, when evaluating infringing offers to sell. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311 (Fed. Cir. 2010).

EPP argues that in the Specification, Paveloc states that "the ARP [block] is identical to Channel Lock II and therefore meets the same criteria." (Doc. No. 67-15 at 6). EPP also notes that the hydraulic characteristics contained in the ARP Specification are identical to those contained in the Channel Lock II Specification. (*Compare* Doc. No. 67-15 at 6 *with* Doc. No. 67-6 at 5). Given the lack of a track record, EPP reasons that the only way for the two blocks to have the exact same hydraulic characteristics would be if they had the exact same design and configurations. (Doc. No. 138 at 12) (citing Declaration of Doug Deem, Doc. No. 67-13 at ¶ 12).

EPP additionally argues, in both its original and supplemental responses, that Paveloc

attempted to pass off the ARP block as the same as the Channel Lock II. According to EPP, at the time Fort Bend County began soliciting bids, the ARP block had not been hydraulically tested. EPP maintains that Paveloc sought to avoid this potential obstacle by allegedly claiming that the "ARP block did not need to be tested because the Channel Lock II had already been tested and proved." (Doc. No. 138 at 12) (citing Declaration of Huff, Doc. No. 136-3 at 7–8) ("[S]ince [Channel Lock II] has been accepted . . . ARP should be accepted as well."). EPP concludes that these actions demonstrate that a question of material fact exists regarding whether Paveloc made an infringing offer to sell.

In its original reply, Paveloc denied that it made any "infringing offer to sell" because the "ARP block does not meet each and every limitation of at least Claim 1, and thus all Asserted Claims, of the '435 Patent. Accordingly, as a matter of law, Paveloc does not literally infringe any Asserted Claim." (Doc. No. 70 at 14) (citing *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000)). With respect to EPP's claim that the ARP block literally infringes because Paveloc represented the ARP block having "identical" technical specifications as the Channel Lock II, Paveloc argues this is not appropriate for an infringement analysis. (Doc. No. 70 at 14). Instead, Paveloc contends that infringement "rests upon whether the accused product meets each and every limitation of the Asserted Patent," and that the ARP block does not.

In its supplemental briefing, Paveloc argues that EPP's "offer to sell" argument does not create a genuine issue of material fact because EPP's argument is inconsistent with the ARP Specification. (Doc. No. 135 at 3 n.3).

The Court finds EPP has demonstrated that a material question of fact exists as to whether Paveloc made an infringing offer to sell. While the ARP Block's Specification suggests that the blocks are not identical, EPP has presented evidence that Paveloc described the ARP block as

7

"*identical* to [Channel Lock II]." (Doc. No. 67-15 at 6) (emphasis added). In other words, the ARP block Specification appears to be directly at odds with statements made by Paveloc. Paveloc's motion is denied on this point.

V.     **Conclusion**

For the foregoing reasons, Paveloc's Motion for Partial Summary Judgment is **DENIED**. (Doc. No. 58).

Signed at Houston, Texas, this 25th day of April, 2022.

Andrew S. Hanen
United States District Judge