IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAVE/LOCK/PLUS II, LLC, | § | CIVIL ACTION NO. 4:20-cv-3557-ASH |
| Plaintiff, | § | |
| vs. | § | |
| EROSION PREVENTION PRODUCTS LLC AND LEE A. SMITH, | § | JURY TRIAL DEMANDED |
| Defendants. | § | |
| and | § | |
| TLC TRUCKING & CONTRACTING, LLC D/B/A TLC CONSTRUCTION CONTRACT SERVICES, | § | |
| Third-Party Defendant. | § | |

**DEFENDANTS EROSION PREVENTION PRODUCTS LLC AND LEE A. SMITH'S MOTION TO DISQUALIFY DR. AMANDA COX AS PLAINTIFF PAVE/LOCK/PLUS II, LLC'S EXPERT WITNESS**

Defendants Erosion Prevention Products and Lee A. Smith. ("Defendants" or "EPP") file their Motion to Disqualify Dr. Amanda Cox as an Expert Witness for Plaintiff Pave/Lock/Plus II, LLC ("Paveloc") pursuant to the Court's order issued on June 24, 2022 [Dkt. 146], and would respectfully show the Court as follows:

## I. <u>Introduction</u>

On June 3, 2022, Paveloc served upon EPP and TLC, a designation of expert witnesses and corporate representatives pursuant to paragraph 6(D) of the Protective Order in this case [Dkt. No. 130] identifying Dr. Amanda Cox among its designated expert

witnesses. Within the time permitted and in accordance with the terms of the Protective Order, EPP informed Paveloc that it objected to Paveloc's use of Dr. Cox as an expert.

Over a period extending from May 2002 until July 2013, Dr. Cox worked in various capacities for the Colorado State University ("CSU") Department of Civil and Environmental Engineering, including working as a Research Assistant, Hydraulics Laboratory Manager – Research Associate, and finally as a Research Scientist. During this time, Dr. Cox was also completing her Master's Degree and Ph.D. in Civil Engineering, Hydraulic Engineering at CSU.

While Dr. Cox worked in the CSU Department of Civil and Environmental Engineering, EPP engaged CSU and Dr. Cox to conduct various hydraulics tests on several EPP products, including the revetment block products at issue in this case, and to generate confidential reports for EPP on these tests. Because Dr. Cox previously worked extensively with EPP and would have received confidential and proprietary EPP information, as well as being privy to the confidential information obtained from the testing and analysis of EPP's products, her designation as Paveloc's expert witness presents a serious and irreconcilable conflict of interest. As such, EPP moves to disqualify Dr. Cox from serving as Paveloc's expert witness in this case.

## II. <u>Legal Standard</u>

The Fifth Circuit has articulated a two-part test for determining whether an expert should be disqualified, namely: (1) whether it was objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed; and (2) whether any confidential or privileged information was disclosed by the first party to the expert. *Nike, Inc. v. Adidas Am. Inc.*, 2006 U.S. Dist. LEXIS 97109, at *4-5 (E.D. Tex. Sept. 29, 2006) (citing *Koch Refining Co. v. Boudreaux*, 85 F.3d 1178, 1181 (5th Cir.

1996)). The Fifth Circuit also suggests that courts consider whether the public interest weighs in favor of disqualifying the expert. *Id.* The party seeking disqualification bears the burden of proving that disqualification is warranted. *Id.*

## III. Argument

Dr. Cox is not a proper expert witness for Paveloc due to her preexisting, confidential relationship with Erosion Prevention Products and Lee A. Smith. As discussed above, the Fifth Circuit analysis evaluates whether: (1) it was objectively reasonable for the first party (in this case, EPP) who claims to have retained the expert to conclude that a confidential relationship existed; and (2) any confidential or privileged information was disclosed by the first party (*i.e.*, EPP) to the expert. *Id*. Under this two-part standard, Dr. Cox should be excluded because EPP had a reasonable expectation of confidentiality with Dr. Cox as she was the co-author of at least one of the confidential hydraulic testing reports prepared for EPP, and she served as the co-principle investigator for the testing of several EPP products and systems. Additionally, Dr. Cox should be excluded because she was provided confidential and proprietary information that EPP had a reasonable expectation that Dr. Cox/CSU would maintain its information in confidence.

1. *EPP Had a Reasonable Expectation of Confidentiality.*

Courts have found that a party has a reasonable expectation of confidentiality when the party reasonably expects that any communication . . . would be maintained in confidence. *Koch Ref. Co.*, 85 F.3d at 1182. Such a relationship exists when "the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Id.* (quoting *Marvin Lumber Co. v.*

*Norton*, 113 F.R.D. 588, 591 (D.Minn.1986)).

EPP confidentially communicated with CSU and Dr. Cox during the testing of its proprietary Channel Lock products to determine the hydraulic performance and characteristics of those products. *See* Declaration of Lee A. Smith ("Smith Decl.") at ¶ 2. Indeed, during the time that Dr. Cox worked in the CSU Department of Civil and Environmental Engineering, EPP engaged CSU and Dr. Cox to conduct at least the following tests: Hydraulic Stability of Channel Lock II Class 450 Concrete Block System in Steep-Slope, High Velocity Flow in August 2009, a test of the Hydraulic Performance of Channel Lock II – Energy Dissipation System in April 2011, and a test of the Hydraulic Stability of Channel Flex PBD Series Class 475 Articulating Concrete Block System in Steep-Slope, High-Velocity Flow, in July 2011. CSU (and its personnel, including Dr. Cox) was to keep these reports, and the analytical information contained within them, confidential. *See* Smith Decl. at ¶ 3. Importantly, CSU and Dr. Cox tested revetment blocks that preceded EPP's engagement with Paveloc, including the Channel Lock II 4.5" and 8" revetment blocks. *See* Smith Decl. at ¶ 4. In the Cost Quotation and Schedule Estimation to EPP, Dr. Cox indicated that she would serve as "the Principal Investigator for the project." Dr. Cox further indicated that she would "direct the research program, oversee the testing and draft the final report." *See* Smith Decl. at ¶ 5. As these hydraulic performance tests and their results can provide a competitive advantage in an increasingly competitive erosion prevention industry, EPP intended that its communications with CSU and Dr. Cox related to its various revetment blocks, its methods and practices for manufacturing and installing such blocks, and regarding testing strategy and results related to such blocks be kept confidential.

Moreover, the relationship between EPP and Dr. Cox was neither cursory nor brief.

The relationship between EPP and CSU began in 2001 and continued throughout Dr. Cox's tenure there. During that time, EPP paid CSU more than $150,000 to analyze and test the various EPP products and systems, with the understanding that CSU (and its personnel, including Dr. Cox) would keep all information provided by EPP, as well as information derived from analyzing and testing EPP products, strictly confidential. *See* Smith Decl. at ¶ 6; *see also* Ex. C to Smith Decl. This is the type of "long-standing," consequential relationship contemplated by the Fifth Circuit in *Koch Ref. Co.*

Permitting Dr. Cox to be designated as an expert here despite having been part of a confidential relationship with EPP, creates an imminent risk that Dr. Cox will use the information she was given, even if inadvertently, in a manner that would harm EPP. Therefore, in the interest of fairness and to preserve the integrity of the proceedings, Dr. Cox should be disqualified from serving as an expert witness in this case.

2. *Dr. Cox Was Provided Confidential Information.*

The second prong of the disqualification analysis under *Koch Ref. Co.* asks whether any confidential or privileged information was disclosed by the first party (*i.e.*, EPP) to the expert. *Nike, Inc.*, 2006 U.S. Dist. LEXIS 97109, at *4-5. The answer to this inquiry is a resounding yes. There can be no dispute that the highly sensitive, proprietary, and confidential design, manufacturing, and installation specifications are confidential information and that the same was provided to CSU and Dr. Cox. Specifically, EPP provided CSU and Dr. Cox with confidential information regarding the construction of the testing flumes, confidential information regarding the proper orientation and installation of EPP's blocks that were being studied, and confidential information regarding the installation of revetment blocks using cabling systems designed to withstand variable water flows. *See* Smith Decl. at ¶ 7.

Additionally, EPP provided CSU and Dr. Cox with information regarding manufacturing techniques for the Channel Lock products, confidential information regarding the size and weight of the Channel Lock products, and confidential installation techniques. *See* Smith Decl. at ¶ 8. This confidential information was critical to CSU's ability to perform the necessary hydraulic testing. Indeed, but for the confidential information provided by EPP, the hydraulic testing performed by CSU would have been incomplete and essentially, unusable. In addition to the confidential and proprietary information provided by EPP to CSU and Dr. Cox, the testing conducted by them, as well as the results of those tests, are also considered to be highly confidential to EPP.[1] EPP reasonably expected CSU and Dr. Cox to preserve the confidentiality of both the information it disclosed to CSU and Dr. Cox, as well as the results of the tests of EPP's various products. *See* Smith Decl. at ¶ 9. Paveloc will undoubtedly argue that the information disclosed was technical and therefore, cannot be confidential under *Koch Ref. Co.* However, courts in this division have held that "information can be both technical and confidential" and that "the two are not always mutually exclusive." *Dyan-Drill Technologies v. Conforma Clad Inc.,* Civil Action No. 4:03-cv-05599 (S.D. Tex., Houston Division, May 16, 2005). Based on Dr. Cox being provided EPP's confidential information, EPP moves to disqualify Dr. Cox from serving as Paveloc's expert witness in this case.

3. *Public Interest Favors Disqualification*

The public interest weighs in favor of disqualifying Dr. Cox. The court should balance the competing policy objectives in determining the expert disqualification. The

[1] Paveloc clearly understands the highly sensitive and confidential nature of the hydraulic performance testing conducted by CSU. Paveloc has had its ARP blocks tested by CSU. When it produced the results of that test in discovery in this case, Paveloc designated the test report as "Confidential Attorneys' Eyes Only" under the terms of the Protective Order.

policy objectives favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. *Koch Ref. Co.*, 85 F.3d at 1182. Here, the parties are direct competitors, and Dr. Cox was given relevant, confidential information pertinent to this litigation. Paveloc has been very open about the fact that it has set out to copy EPP's products. It would be inappropriate for Paveloc to use Dr. Cox as an expert in this case, an engineer who previously worked extensively with EPP and who possesses and/or had access to significant confidential and proprietary information belonging to EPP. The knowledge and information obtained by Dr. Cox while working at CSU and conducting tests and research on EPP products and systems could assist Paveloc with copying additional EPP products and systems. Further, because Dr. Cox previously worked extensively with EPP, for her now to serve as an expert witness for Paveloc presents a serious and irreconcilable conflict of interest. Quite simply, the risk is too great that Dr. Cox would use the information she was given, even if inadvertently, in some manner that would harm EPP. As such, Dr. Cox should be disqualified from serving as an expert in this case.

## IV. <u>Conclusion</u>

In view of the foregoing, Defendants Erosion Prevention Products and Lee A. Smith respectfully request that the instant Motion to Disqualify Dr. Amanda Cox be granted in its entirety, and the Court enter an order preventing Paveloc from designating Dr. Cox as an expert, using her services as a consulting expert to supply information to or service, data or analysis as the basis of information on which any subsequent retained testifying expert may rely on in this matter, as well as any other relief, whether at law or equity, to which Defendants are justly entitled.

Dated: July 8, 2022

Respectfully submitted,

By: */s/ Steven N. Williams*
Steven N. Williams
Texas State Bar No. 21577625
swilliams@munsch.com
Winston O. Huff
Texas State Bar No. 24068745
whuff@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

Robert Hancock
Texas State Bar No. 24036719
rhancock@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
700 Milam Street, Suite 800
Houston, TX 77002
Telephone: (713) 222-1470
Facsimile: (713) 222-1475

**ATTORNEYS FOR DEFENDANTS EROSION PREVENTION PRODUCTS AND LEE A. SMITH**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of July, 2022, a copy of the foregoing pleading was forwarded via the court's electronic filing system to all counsel of record.

*/s/ Winston O. Huff*
Winston O. Huff