United States District Court
Southern District of Texas
**ENTERED**
October 08, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EROSION PREVENTION PRODUCTS LLC, § § *Plaintiff*, § § vs. § § § PAVE/LOCK/PLUS II, LLC, § § *Defendant*, § § and § § TLC TRUCKING & CONTRACTING, LLC § d/b/a TLC CONSTRUCTION CONTRACT § SERVICES, § § *Third-Party Defendant*. § | CIVIL ACTION NO. 4:20-CV-03557 |

## ORDER

Pending before this Court is Pave/Lock/Plus II, LLC and TLC Trucking & Contracting, LLC's (collectively, "Defendants") Motion to Strike Supplemental Expert Report of Andrea H. Evans, Esq. (Doc. No. 266). Erosion Prevention Products, LLC ("Plaintiff") responded in opposition. (Doc. No. 273).

Also pending before the Court are Plaintiff's Motions in Limine Nos. 9 and 10. (Doc. No. 265 Exh. E-1). Defendant responded in opposition. (Doc. No. 278).

Having considered the motions, responses, relevant pleadings, and exhibits, the Court **GRANTS** Defendants' Motion to Strike, (Doc. No. 266), and **DENIES** Plaintiff's Motions in Limine Nos. 9 and 10, (Doc. No. 265 Exh. 2-1).

I.  Background

EPP and Paveloc both construct and sell "erosion prevention" systems that are used in retaining walls. The systems are made up of interlocking blocks. EPP has a patent on its "Channel Lock II block" (U.S. Patent No. 8,123,435) ("'435 Patent"). In 2010, EPP contracted with Paveloc to manufacture the Channel Lock II block. Paveloc manufactured blocks for EPP until 2019. At some point the business relationship soured. Paveloc stopped making the EPP product and began manufacturing a competing product, the ARP block. EPP alleges that the ARP block is a "knock off" of the Channel Lock II block and that Paveloc was making the ARP blocks using the same molds that EPP had provided to Paveloc to make the Channel Lock II product.

In 2020, Fort Bend County Levee Improvement District No. 2 opened a new project for bidding. It awarded the contract for the project to TLC, a general contractor for construction projects. TLC took bids from subcontractors for erosion prevention blocks. Both Paveloc and EPP submitted bids. TLC accepted Paveloc's bid. According to EPP, Paveloc got the project by using the ARP block, the alleged knockoff of EPP's Channel Lock II block. Now, with the trial on EPP's claims just a week away, the Court is faced with several evidentiary motions. These are addressed in turn.

II. Legal Standards

A. *Daubert* Standard

Under Rule 702, a qualified expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702(a)–(d). An expert may be qualified to testify based on his or her "knowledge, skill, experience, training,

2

or education." *Id.* "Under *Daubert*...and Rule 702, courts are charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)). "Patent cases, like all other cases, are governed by Rule 702." *Id.*

### B. Rule 26 Expert Disclosures

Federal Rule 26(a)(2)(B) requires that the disclosure of an expert witness must be accompanied by a written report, prepared and signed by the expert, that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B). Rule 26(e)(1) and 26(e)(1)(A) provide that "a party who has made a disclosure...must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" FED. R. CIV. P. 26(e)(1). Rule 26(e)(2) further states that "for an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." FED. R. CIV. P. 26(e)(2). "Parties must make these supplemental expert disclosures by the time Rule 26(a)(3) pretrial disclosures are due." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016).

"Supplemental disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Id.* Rule 37 provides that "any party who fails to provide the information required by Rule 26 is not allowed to use that information...to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." *Anaya v. Tricam Indus., Inc.*, No. 5:18-CV-01045-OLG, 2021 WL 7448757, at *3 (W.D. Tex. Aug. 30, 2021) (citing FED. R. CIV. P. 37(c)(1)).

3

A district court is authorized to "control and expedite" pretrial discovery through a scheduling order pursuant to Rule 16(b). *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). Accordingly, a trial court may exclude evidence as a means of enforcing a pretrial scheduling order. *Id*. The Fifth Circuit has established a four-factor test to review a district court's discretion to exclude untimely expert testimony: "(1) the explanation for the failure [to produce the report earlier]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *AIG Eur., Ltd. v. Caterpillar, Inc.*, 831 F. App'x 111 (5th Cir. 2020) (citations omitted).

### III. Analysis

#### A. Defendants' Motion to Strike Andrea H. Evans' Supplemental Report

With the trial just a week away, Plaintiff supplemented its expert's report, offering opinions on the USPTO patent process and the validity of the '435 Patent as a rebuttal to Defendants' claim of invalidity. (Doc. No. 266-1). Defendants argue that this supplementation is untimely and circumvents this Court's ruling that Evans is not a person of ordinary skill in the art, unqualified to give opinions on invalidity. (Doc. No. 19 at 2–3). Plaintiff, on the other hand, argues that Rule 26(e)(2) allows this supplementation and that the report only speaks to what Evans is qualified to opine on—the patent process and what a hypothetical patent examiner may conclude.

To be sure, Evans is qualified to speak to the patent process. She is a former patent and trademark examiner, has a civil and environmental engineering degree from Georgia Tech, and worked at an engineering company between college and law school. (Doc. No. 266-1 at 6). As a patent examiner, however, she did not work in the field of erosion prevention or cement block manufacturing, but instead, examined time-measuring devices, keyboards, and press printing

4

systems. (*Id.*). Consequently, this Court held that she is not a person of ordinary skill in the relevant art, and thus, she cannot opine on invalidity of the patent. (Doc. No. 257 at 7).

The question then becomes whether Evans can offer substantially similar expert opinions regarding the validity or invalidity of the '435 Patent as she did in the excluded report simply by couching it in her patent-examiner experience.[1] As the Federal Circuit has held, the answer is no. *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008). In *Sundance*, the court considered the admission of an expert's testimony that, like here, spoke to USPTO practices and invalidity, including anticipation and obviousness. *Id.* at 1360. The court held that, even though the expert was a "patent attorney with extensive experience in patent law and procedure," he was not qualified "on the issues of infringement or validity." *Id.* at 1360–61. That is because issues of invalidity "are *exclusively* determined from the perspective of ordinary skill in the art"—not a patent lawyer. *Id.* at 1361 (emphasis added). Therefore, "[u]nless a patent lawyer is also a qualified technical expert, his testimony on these kinds of issues is improper and thus inadmissible." *Id.* at 1362.

Here, Evans is also a patent attorney with extensive experience in patent law and procedure. As this Court has held, however, she is not a qualified technical expert on the issues of infringement or validity. Thus, she is not qualified to give opinions on issues that are "exclusively determined from the perspective of ordinary skill in the art." To hold otherwise would be to convert every former patent examiner into a person of ordinary skill in every art, regardless of how tenuous their

---

[1] Plaintiff argues that "Evans never opines on the validity or obviousness of the patent-at-issue." (Doc. No. 273 at 4). She does. For example, in the supplemental report, she writes: "Because the combination of Dura-Mat or McAllister with Reagan does not teach or suggest the claimed invention, **a patent examiner would conclude that Reagan is not prior art to the '435 Patent.**" (Doc. No. 266-1 at 35). This is only a minor change from the excluded report, which reads: "Because the combination of Dura-Mat or McAllister with Reagan does not teach or suggest the claimed invention, **the '435 Patent is not invalid.**" (Doc. No. 189-1 at 33). To say one is not prior art to the '435 Patent is to say that one does not render the '435 Patent invalid by anticipation or obviousness, especially when the supplemental report is already riddled with unqualified, non-hypothetical assertions that various prior arts do not "teach or suggest" the claimed invention.

5

patent-examination experience is to the patent dispute at hand. "Allowing a patent law expert without any technical expertise to testify on the issues of infringement and validity amounts to nothing more than advocacy from the witness stand." *Id.* at 1355–56.

True, Evans is a former patent examiner, unlike the expert in *Sundance*. Thus, EPP may argue, Evans can testify to what a patent examiner may determine. Courts in this District, however, have interpreted *Sundance* to exclude the opinions of former patent examiners on issues of invalidity. *See Wright Asphalt Products Co., LLC v. Pelican Refining Co., LLC*, No. 4:09-cv-1145, 2012 WL 1936416 (S.D. Tex. May 29, 2012). In *Wright Asphalt*, the defendant sought to introduce the expert testimony of Eric Steffe, a former patent examiner, to speak on "Patent Office practice and alleged irregularities in that office's handling of" the patent. *Id.* at *6. In disallowing Steffe from opining on the patent office's potential handling errors, the court wrote:

> The case law makes it clear that a *former patent examiner*, such as Steffe . . . may testify about general Patent Office practices and procedures . . . [but] *cannot testify about noninfringement and invalidity* because he lacks ordinary skill in the relevant art.

*Id.* at *9 (emphasis added). *See also Commonwealth Sci. & Indus. Rsch. Org. v. Mediatek Inc.*, No. 6:12-cv-578, 2015 WL 12806515, at * 4–5 (E.D. Tex. Jun. 29, 2015) (citing *Sundance*, 550 F.3d at 1364–65) (writing that, even though the expert was a former Commissioner of Patents at the Patent and Trademark Office, he "is not a person of ordinary skill in the art, [and thus,] is not qualified to offer opinions relating to validity [and] infringement . . . .").

The Federal Circuit has allowed a former patent examiner to testify regarding infringement in *SEB S.A. v. Montgomery Ward & Co., Inc.*—but that case is factually distinguishable. *See* 594 F.3d 1360 (Fed. Cir. 2010), *rev'd on other grounds sub nom, Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). There, the patent at issue was for a deep fryer. The expert, Van Horn, was a former patent examiner in various fields involving poly materials, though not deep fryers

6

specifically. *Id.* at 1373. Nonetheless, the court held that Van Horn "established an adequate relationship between his experience [in polymer materials] and the claimed invention," which "involves the selection of particular polymer material that have certain characteristics." *Id.* Therefore, the court held, Van Horn had sufficient relevant technical expertise on top of his patent-law expertise. *Id.*

Here, on the other hand, Evans cannot establish any similar connection between her experience in time-measuring devices, keyboards, and press-printing systems and the claimed invention of certain concrete revetment blocks. Thus, Evans cannot cloak her expert testimony on validity with her experience as patent examiner. That would amount to a circumvention of this Court's order that she is not qualified as a person of ordinary skill in the art. Defendant's Motion to Strike is granted to the extent the report opines on invalidity of the '435 Patent.

### B. Plaintiff's Motions in Limine Nos. 9 and 10

Plaintiff asserts in parts of its Omnibus Motion in Limine that the testimony of Defendants' expert—Dan Bullock—should be excluded. The two subparts regarding Bullock (Nos. 9 and 10) are verbatim duplicates of Plaintiff's earlier Motion to Strike the Declaration of Dan Bullock. *Compare* (Doc. No. 194) (Motion to Strike) *with* (Doc. No. 265 Exh. E-1) (Motions in Limine). More importantly, this Court has already ruled on the Motion to Strike. (Doc. No. 257). Plaintiff has not provided any new fact, reason, or authority for this Court to deviate from its earlier ruling. Thus, as the Court already held, the Motions in Limine Nos. 9 and 10 are denied.

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion to Strike is **GRANTED** to the extent the report purports to discuss invalidity and/or what a reasonable patent examiner would or would not conclude regarding the '435 Patent. Moreover, Plaintiff's Motions in Limine Nos. 9 and 10 are **DENIED**.

Signed on this 8th day of October 2024.

_____
Andrew S. Hanen
United States District Judge